UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Aaron H.,[1]                                                      Civ. No. 22-670 (PAM/BRT)

          Plaintiff,

v.                                                                **MEMORANDUM AND ORDER**

Kilolo Kijakazi, Acting Commissioner of
Social Security,

          Defendant.

---

This matter is before Court on the parties' cross-Motions for Summary Judgment. For the following reasons, Plaintiff's Motion is granted, Defendant's Motion is denied, and this matter is remanded to the Commissioner for further proceedings.

**BACKGROUND**

Plaintiff Aaron H. filed an application for Supplemental Security Income benefits on November 28, 2016. (Admin. R. (Docket No. 10) at 375-78.) Plaintiff alleged that he became disabled on August 9, 2016, as a result of insulin-dependent diabetes with associated peripheral neuropathy, plantar fasciitis, hip arthritis, a fractured elbow, post-traumatic stress disorder ("PTSD"), major depressive disorder, obesity, sleep apnea, hypertension, and alcohol use disorder. (Id. at 16.) Plaintiff's disability onset date was later amended to June 1, 2019. (Id. at 13.)

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

An individual is considered disabled for purposes of Social Security disability benefits if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that he is not engaged in any "substantial gainful activity." Id. § 416.920(a)(4)(i). If he is not, the claimant must then establish that he has a severe medically determinable impairment or combination of impairments at step two. Id. § 416.920(a)(4)(ii). At step three the Commissioner must find that the claimant is disabled, if the claimant satisfies the first two steps and the claimant's impairment meets or is medically equal to one of the listings in 20 C.F.R. Part 404, Subpart P, App'x 1. Id. § 416.920(a)(4)(iii). If the claimant's impairment does not meet or is not medically equal to one of the listings, the evaluation proceeds to step four. The claimant then bears the

burden of establishing his residual functional capacity ("RFC") and proving that he cannot perform any past relevant work.  Id. § 416.920(a)(4)(iv); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  If the claimant proves he is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  If the claimant can perform such work, the Commissioner will find that the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(v).

Plaintiff has had two hearings before an Administrative Law Judge ("ALJ"); both hearings resulted in a determination that Plaintiff was not disabled.  The Appeals Council reversed the first determination, however, finding that the evidence did not support ALJ's conclusions regarding Plaintiff's limitations, nor did the ALJ properly apply Plaintiff's activity restrictions to job duties.  (Admin. R. at 200-02.)  The ALJ determination at issue here is the decision issued after the Appeals Council remanded Plaintiff's application.  (Id. at 13-28.)

**DISCUSSION**

The Court's review of the Commissioner's decision is limited to determining whether that decision is "supported by substantial evidence on the record as a whole," McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000), and whether the decision "complies with the relevant legal standards."  Halverson v. Astrue, 600 F.3d 922, 292 (8th Cir. 2010) (quotation omitted).  Most disputes in disability-insurance matters turn on evidentiary questions, and this Court's review of the ALJ's decisions regarding evidence is exceedingly narrow.  Indeed, if "after reviewing the record, the court finds it is possible to draw two

3

inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." Perks v. Astrue, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted). The Court is also bound, however, to evaluate whether the ALJ used erroneous legal standards or incorrectly applied the law, Collins v. Astrue, 648 F.3d 869, 871 (8th Cir. 2011), and review of such legal issues is not constrained by the same narrow standards. In this case, Plaintiff challenges both the ALJ's evidentiary determinations and the legal standards the ALJ was required to follow.

The ALJ determined that Plaintiff had several severe impairments: diabetes with peripheral neuropathy, plantar fasciitis, bilateral hip arthritis, elbow fracture, PTSD, and major depressive disorder. (Admin. R. at 16.) The ALJ concluded, however, that none of these severe impairments, either singly or in combination, met or medically equaled any of the listed impairments in the Social Security regulations (id. at 16-19), and that Plaintiff was not disabled because he retained the capacity to perform work that exists in substantial numbers in the national economy. (Id. at 20, 27.)

Plaintiff's first argument centers on the ALJ's failure to account for his mental-health limitations as well as his economic circumstances, including the fact that he was often homeless, in evaluating Plaintiff's compliance with treatment. According to Plaintiff, the ALJ was required to determine whether Plaintiff's noncompliance met the good-cause standard of Social Security Ruling 18-3p.

The Government counters that the good-cause standard for noncompliance did not come into play in the ALJ's analysis because that standard applies only if the ALJ first finds an individual disabled, and the ALJ did not find Plaintiff disabled in this matter. The

4

Government's argument elides the ALJ's focus on Plaintiff's alleged failure to comply with treatment, which is mentioned repeatedly in the ALJ's decision. (Admin. R. at 21, 23, 25.)

The ALJ's decision reflects that Plaintiff's noncompliance with treatment played a role in the ultimate determination that Plaintiff was not disabled. For example, in discussing Plaintiff's insulin-dependent diabetes, the ALJ noted times that Plaintiff's disease "has been at less than optimal control with less than full adherence to medical treatment guidelines." (Id. at 21.) Later in that discussion, the ALJ also noted that Plaintiff was hospitalized for uncontrolled diabetes in November 2019. (Id.) And when discussing Plaintiff's diabetes, the ALJ stated that the medical "records reflect inadequate adherence to treatment measures and low motivation to follow his diabetic treatment regimen." (Id. at 22.) But the ALJ did not consider whether Plaintiff's failure to fully adhere to his treatment plan was caused by Plaintiff's lack of housing or Plaintiff's mental-health problems. The ALJ was required to do so and his failure to account for the factors that could explain Plaintiff's treatment noncompliance is erroneous.

Further, the ALJ clearly found Plaintiff's choices unrelated to his disability off-putting, noting on at least seven occasions that Plaintiff drove a vehicle despite not having a driver's license. (Admin. R. at 17, 18, 19, 22, 23, 24.) But whether Plaintiff drove a vehicle without a license is not relevant to the disability inquiry.

Given the ALJ's focus on these potentially irrelevant or even inappropriate factors, there is a substantial question whether those factors impermissibly influenced the ALJ's determination that Plaintiff was not disabled. (See id. at 22 ("[T]he claimant's inconsistent adherence to recommended treatment also weighs against his alleged physical limitations

5

as access to medical care has not been an issue . . . ."); see also id. at 25 ("the reports of lack of adherence to medical treatment protocol with little to no physical therapy weighs against greater [functional] limits.").)

In addition, the ALJ's determination regarding the weight to be afforded the medical opinions in the record reflects a potential misapplication of the regulations' requirements in that regard.  The ALJ discounted several medical opinions from 2017, finding that they were too far removed from Plaintiff's alleged disability onset to be helpful, yet he also credited an opinion from the same timeframe without acknowledging the apparent discrepancy. (E.g., id. at 26.) Moreover, the ALJ essentially disregarded an opinion from Plaintiff's longest-term medical and mental-health provider from within the disability period, finding it inconsistent with other treatment notes but apparently not considering the length of the treating relationship or the provider's specialized training (id.), as the regulations in force for Plaintiff's application required him to do.  20 C.F.R. § 404.1527. On this record, the Court cannot say that the ALJ's failure to consider these factors was harmless.

**CONCLUSION**

Because the ALJ did not consider whether Plaintiff's socioeconomic situation and mental health may have affected his compliance with treatment, and because he did not conduct the required analysis of the medical opinions in the record, remand is required. Accordingly, **IT IS HEREBY ORDERED that**:

6

1. Plaintiff's Motion for Summary Judgment (Docket No. 13) is **GRANTED**;

2. Defendant's Motion for Summary Judgment (Docket No. 15) is **DENIED**; and

3. This matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: Thursday, October 20, 2022               *s/ Paul A. Magnuson*
                                               Paul A. Magnuson
                                               United States District Court Judge